Victor M. Sher, SBN 96197
Todd E. Robins, SBN 191853
Jeffrey Shopoff, SBN SBN 46278
Esther L. Klisura, SBN 221171
Jed J. Borghei, SBN 257049
SHER LEFF, LLP
450 Mission Street, Suite 400
San Francisco, CA 94105
Telephone: (415) 348-8300
Facsimile: (415) 348-8333

Julia M. Lew, SBN 199705
City Attorney
McCORMICK KABOT JENNER & LEW
1220 West Main Street
Visalia, CA 93291
Telephone: (559) 734-6729
Facsimile: (559) 734-8762

Attorneys for Plaintiff CITY OF LINDSAY

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CITY OF LINDSAY,<br><br>    Plaintiff,<br><br>vs.<br><br>SOCIEDAD QUIMICA Y MINERA DE CHILE S.A.; SQM NORTH AMERICA CORPORATION; AND DOES 1 through 200, INCLUSIVE,<br><br>    Defendants. | Case No.  1:11-CV-00046-LJO-SMS<br><br>**PLAINTIFF CITY OF LINDSAY'S NOTICE OF MOTION AND MOTION TO STAY PROCEEDINGS PENDING APPEAL IN RELATED CASE**<br><br>Date:     March 2, 2012<br>Time:    8:30 a.m.<br>Ctrm.:    4<br><br>Honorable Lawrence J. O'Neill |

**NOTICE OF MOTION AND MOTION**

TO DEFENDANT AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on March 2, 2012, at 8:30 a.m., or as soon thereafter as the matter can be heard, in Courtroom 4 of the above-entitled Court, located at 2500 Tulare Street, Fresno, California 93721, plaintiff City of Lindsay will and hereby does move for a stay of proceedings until resolution of the appeal pending in the related case *City of Pomona v. SQM North America Corporation* (Central District of California Case No. 2:11-cv-00167-RGK-VBK; Ninth Circuit Court of Appeals Case No. 12-55147).  This motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the accompanying Declaration of Todd E. Robins, the pleadings and papers on file in this action, and the argument of counsel presented at the hearing on this motion if there is any.

DATED:    February 3, 2012            Respectfully submitted,

                                      SHER LEFF LLP

                                By:         /s/
                                      TODD E. ROBINS
                                      JEFFREY SHOPOFF
                                      ESTHER L. KLISURA
                                      JED J. BORGHEI

                                      Attorneys for Plaintiff CITY OF LINDSAY

<u>**MEMORANDUM OF POINTS AND AUTHORITES**</u>

**I.     INTRODUCTION**

Plaintiff City of Lindsay ("Plaintiff" or "Lindsay") brings this motion for a stay of proceedings in this case until resolution of an appeal pending in the Ninth Circuit Court of Appeals in the related case captioned *City of Pomona v. SQM North America Corporation* ("*Pomona* case").  The appeal in the *Pomona* case involves a defendant in the instant case – SQM North America Corporation ("Defendant" or "SQMNA") – and the admissibility of critical expert evidence that Lindsay intends to rely upon in this case.  Under these circumstances, a temporary stay in this case will promote the orderly administration of justice because the parties and the Court will be able to proceed with guidance from the appellate court, eliminating the risk of inconsistent rulings and conserving resources for all involved.  In contrast, by opposing this motion and seeking a "Lone Pine" case management order, Defendant is asking the Court to expend significant resources analyzing and ruling upon a complex question of expert admissibility, while the very same issue is being considered by the Ninth Circuit.  As explained below, Defendant's claims of prejudice should a stay be granted are without merit, as Defendant has shown no interest in litigating this case in the over six months since the last hearing.  At the same time, the prejudice to Lindsay should discovery, particularly early expert discovery, be allowed are substantial.

**II.    STATEMENT OF FACTS**

   **A.    Background and Procedural History of the Instant Case**

Lindsay is a small agricultural community located in Tulare County, California that owns and operates a public drinking water system.  Declaration of Todd E. Robins in Support of Plaintiff's Motion for Stay of Proceedings ("Robins Decl."), ¶ 2.  Effective October 18, 2007, the State of California adopted a health-based maximum contaminant level ("MCL") for perchlorate in drinking water of 6 parts per billion based on perchlorate's adverse affects on human fetal development.  *See* 15 Cal. Code Regs. § 64431.  The MCL represents the maximum allowable concentration of perchlorate that may be contained in water delivered to the public.  *See* Cal Health & Safety Code § 116275(f).  In December 2007, when Lindsay had its drinking water

1  wells tested for perchlorate, it discovered that one of its three drinking water wells contains
2  perchlorate in excess of the MCL.  Robins Decl., ¶ 2.  Since that discovery, Lindsay has been
3  forced to take the contaminated well "offline" pending construction of a treatment facility
4  capable of removing perchlorate from Lindsay's water.  *Id*.

5       Lindsay filed this action in order to recover, among other things, the very substantial
6  costs of designing, installing, operating and maintaining such a treatment facility.  *Id*., ¶ 3.
7  Lindsay alleges that the perchlorate contamination was caused by use of Chilean nitrate
8  fertilizers imported and sold by Defendant, which contained perchlorate prior to a design change
9  that occurred in the early 2000s.  *Id*.  Defendant's fertilizers were promoted for use on citrus
10 trees, which are prevalent in Lindsay.  *Id*.  Indeed, the contaminated Lindsay well is located
11 approximately 300 feet from a longstanding citrus grove, and Defendant has produced
12 documents showing sales of its fertilizers to agricultural supply companies both in and around
13 Lindsay.  *Id*.  In addition to this evidence, Lindsay has scientific evidence in the form of isotopic
14 "fingerprint" analysis (described in more detail in section II(C) below) that identifies the
15 perchlorate in Lindsay's well as the unique type of perchlorate that is found only in caliche ore
16 mined from the Atacama Desert of Chile, ore that is found exclusively in Defendant's fertilizer
17 products.  *Id*.

18      Discovery in this case opened on March 15, 2011.  *Id*., ¶ 4.  Since that time, Defendant
19 has propounded one set of document requests on Lindsay, in response to which Lindsay
20 produced over 11,000 pages of documents and a privilege log.  *Id*.  On May 6, 2011, Defendant
21 took a Rule 30(b)(6) deposition of Lindsay limited strictly to custodian of records topics.  *Id*.
22 Defendant has not served any additional written discovery on Lindsay since, nor has Defendant
23 sought to take any other depositions in the case.  *Id*.  Lindsay, on the other hand, has taken seven
24 depositions in this case – five depositions of Defendant's employees/corporate designees and two
25 depositions of third-parties.  *Id*.  Indeed, Lindsay has largely completed its discovery on
26 "liability" issues related to its products liability/design defect claim.  *Id*.  No trial date has been
27 set.  *Id*.
28 ///

### B. The *Pomona* Case

Like the instant case, the *Pomona* case was filed by a municipal water provider – the City of Pomona, California ("Pomona") – regarding perchlorate contamination in groundwater wells. *Id*., ¶ 5. Pomona alleges that the contamination was caused by the use of Defendant's fertilizers, and Pomona asserted the same design defect cause of action as is asserted by Lindsay in this case. *Id*. The *Pomona* case involves 14 perchlorate-contaminated wells. *Id*., ¶ 6. Unlike Lindsay, which continues to be a major citrus producing community, it is undisputed that large-scale citrus farming in Pomona ended in the 1950s. *Id*. Use of Defendant's fertilizers in Pomona likely also ended in the 1950s. *Id*. Not surprisingly, there are no eyewitnesses who can reliably testify that Defendant's fertilizers were used in Pomona. *Id*. Likewise, Defendant has no records of sales of fertilizers to purchasers in Pomona because the company's records do not go back that far. *Id*. Thus, unlike the instant case, the only direct evidence connecting Defendant's products to Pomona is forensic science in the form of isotopic "fingerprinting." *Id*.

### C. Stable Isotope Analysis and Exclusion of that Evidence in the *Pomona* Case

Naturally occurring perchlorate from Chilean caliche ore has a unique isotopic signature – that is, a unique ratio of chlorine and oxygen isotopes – which helps scientists using a forensic technique known as stable isotope analysis to distinguish it from perchlorate that is man-made or from other sources. *Id*., ¶ 7. Application of this type of stable isotope analysis to determine the sources of perchlorate contamination in drinking water supplies has been demonstrated successfully in multiple peer-reviewed studies over the past 10 years. *Id*. Additionally, in December 2011, the United States Department of Defense published a standardized protocol for conducting isotopic analysis of perchlorate. *Id*. In fact Dr. Edward Urbansky, a former chemist for the United States Environmental Protection Agency and perchlorate expert, who is now <u>retained by Defendant</u>, testified at deposition in this case that stable isotope analysis "is a mature analytical chemistry technique that is very reliable." *Id*.

Lindsay and Pomona are represented by the same litigation counsel, who retained Neil Sturchio, Ph.D., a renowned expert in isotopic geochemistry with 33 years experience and one of the leading scientists in the field of stable isotope analysis. *Id*., ¶¶ 5, 8. Dr. Sturchio's

assignment in the two cases was to apply the technique of stable isotope analysis to samples of groundwater obtained from Lindsay's sole contaminated well, as well as several of Pomona's contaminated wells, and opine on the source of the perchlorate in the sampled wells. *Id*., ¶ 8. Using the standardized protocol published by the Department of Defense (which Dr. Sturchio helped develop and coauthored), he concluded that the predominant source of perchlorate in the sample taken from Lindsay's well and all samples taken from Pomona's wells was Chilean caliche ore. *Id*.

On November 23, 2011, Defendant filed a *Daubert* motion in the *Pomona* case to exclude the testimony of Dr. Sturchio. *Id*., ¶ 9. This was one of 18 motions *in limine* filed in the case on the same day. *Id*. Over 600 pages of briefing and exhibits were submitted in connection with the motion to exclude Dr. Sturchio's testimony. *Id*. On January 5, 2012, the Honorable R. Gary Klausner, the presiding district court judge in the *Pomona* case, held an evidentiary hearing on Defendant's *Daubert* motion, and heard testimony from Dr. Sturchio and Dr. Urbansky. *Id*. On January 6, 2012, Judge Klausner issued an eight-sentence order excluding Dr. Sturchio's opinions regarding the source of the perchlorate in Pomona's water. *Id*. Thereafter, Pomona and SQMNA entered into a stipulation for dismissal with a reservation of rights to appeal, based on Pomona's conclusion that it could not prevail at trial without Dr. Sturchio's testimony. *Id*. Pomona filed a Notice of Appeal seeking review of Judge Klausner's exclusion order regarding Dr. Sturchio on January 20, 2012. *Id*. Pomona contends that the district court applied the wrong legal standard and made factual findings that are unsupported by the record. *Id*. Defendant has since filed a Notice of Cross-Appeal seeking appellate review of four other interlocutory orders. *Id*. On January 27, 2012, the Ninth Circuit issued a Time Schedule Order establishing a briefing schedule for the appeals and cross-appeals. *Id*., ¶ 10. Under the Time Schedule Order, all briefing is to be completed by September 14, 2012.[1] *Id*.

---

[1] On January 30, 2012, the Ninth Circuit issued an order suspending the briefing schedule pending a determination that the appellate court has jurisdiction to hear the appeals. Robins Decl., ¶ 10. Because a determination of appellate jurisdiction is expected well before the first appellate brief would be due under the January 27, 2012 Time Schedule Order, Plaintiff's counsel expects that all briefing will be done by the end of summer 2012 as was scheduled. *Id*.

### III. LEGAL ARGUMENT

#### A. This Court Has Discretion to Stay Proceedings

It is well established that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). District courts may exercise this power to stay proceedings pending "resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.3d 857, 863 (9th Cir. 1979). The independent proceedings may be "judicial, administrative, or arbitral in character," and it is not necessary "that the issues in such proceedings are necessarily controlling of the action before the court." *Id*. at 863-64. "In such cases the court may order a stay of the action pursuant to its power to control its docket and calendar and to provide for a just determination of the cases pending before it." *Id*. at 864.

In deciding whether to issue a stay, courts must weigh the competing interests that will be affected by the grant or refusal of a stay, including:

> (1) the possible damage which may result from granting the stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of simplifying or complicating issues, proof, and questions of law which could be expected to result from a stay.

*In re Taco Bell Wage and Hour Actions*, No. 1:07-CV-01314-OWW-DLB, 2011 WL 3846727, *1 (E.D. Cal. Aug. 30, 2011), citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). As shown below, each of these considerations favor the issuance of a stay in this case.

#### B. A Stay Will Not Prejudice Defendant

Defendant will suffer no prejudice because a temporary stay will reduce the time and expense required of the Court and all parties, <u>including</u> Defendant. Moreover, because Defendant is not seeking any recovery in this case, it cannot complain of any delayed justice. Although Defendant has asserted a single counterclaim for declaratory relief, all that it seeks is a

---

Of course, should the Ninth Circuit determine that it has no jurisdiction, the appeals in the *Pomona* case will be resolved even earlier.

PLAINTIFF CITY OF LINDSAY'S NOTICE OF MOTION AND MOTION TO STAY PROCEEDINGS

7

declaration that Plaintiff and other unnamed entities are responsible for causing the groundwater contamination in Lindsay.[2]  Furthermore, this is not a situation where Defendant will have to sit passively while other litigants get to settle the rule of law and define the rights of all.  SQMNA is a defendant in both actions, it is the appellee and cross-appellant in the *Pomona* case, and it is represented by the same attorneys in both cases.  Therefore, it will be actively involved in litigating the admissibility of stable isotope analysis and Dr. Sturchio's opinions during the requested stay.

In its recent filing seeking a ruling on its "Lone Pine" motion, Defendant asserted that it would be prejudiced by a stay because "to the extent [Lindsay's] case relies on evidence other than [its] 'fingerprint' expert, such witnesses are aged and documents already are lost."  *See* Defendant's Reply to Status Update and Request for Decision (Docket No. 34), 5:2-3.  This argument has no merit.  If documents "already are lost," then a stay certainly cannot make the evidence more unavailable.  Moreover, both parties have produced documents in this case.  To the extent there are additional potentially relevant documents, the parties have an ongoing obligation to preserve those documents, which should protect those documents from becoming unavailable during the pendency of the stay.  As for aging witnesses, Defendant's argument is belied by the fact that Defendant has not noticed, much less taken, any deposition in 11 months of discovery other than the single May 2011 deposition of Lindsay's designees on custodian of records topics.  Nonetheless, Lindsay has no objection to, and indeed supports, including a "good cause" exception to the requested stay, whereunder the parties could either agree or, if no agreement is possible, apply for relief from the stay to depose specifically identified, aged witnesses.

Defendant also argues that Lindsay "is tactically moving for a stay of this matter before any record has been developed upon which the Court of Appeal could rule and to the prejudice

---

[2] In its Counterclaim, Defendant had also sought attorneys' fees and costs against Lindsay, but this Court struck that claim on June 20, 2011.  *See* Order on Plaintiff's Motion to Strike Pursuant to Rule 12(f) (Docket No. 27).

of SQMNA." *See* Defendant's Reply to Status Update and Request for Decision (Docket No. 34), 3:19-21. This makes no sense. An extensive record related Dr. Sturchio's stable isotope methodology has of course been developed in the *Pomona* case. Dr. Sturchio's opinions in this case are based on exactly the same methodology. Thus, rather than any tactical motive, Lindsay's objective here is simply to avoid the waste of this Court's and the parties' time and resources that would result from litigating the admissibility of Dr. Sturchio's opinions in this case under Federal Rule of Evidence 702, when a ruling on that exact issue from the Ninth Circuit Court of Appeals is forthcoming. Defendant essentially admits as much. *See* Defendant's Reply to Status Update and Request for Decision (Docket No. 34), 3:6-9 ("a ruling [on the reliability of Dr. Sturchio's methods under Rule 702] would stand regardless of whether he were testifying [in] Pomona or in Lindsay.") In short, Defendant can show no prejudice that would result from the requested stay.

      **C.**      **A Stay Will Alleviate Substantial Hardship on Plaintiff**

Lindsay will be substantially prejudiced if it must proceed with discovery in this case, especially expert discovery, while the admissibility of isotopic evidence is up on appeal. Without question, isotopic evidence is a key piece of Lindsay's causation evidence. Lindsay believes it could still establish causation without this evidence by relying on direct evidence of product use (*i.e.*, documentary and/or testimonial evidence that Defendant's products were used by farmers in Lindsay), as well as hydrogeological evidence regarding the migration of perchlorate from farm fields to Lindsay's well.[3] As Defendant well knows, however, the discovery effort and cost to Lindsay of preparing and proving up causation in this case without the benefit of the isotopic evidence are not only substantial, but substantially more than the effort and cost of doing so with the benefit of the isotopic evidence. Robins Decl., ¶ 11. Given that the

---

[3] *See, e.g., Castaic Lake Water Agency v. Whittaker Corp.*, No. CV00-12613 AHM (Rzx), 2002 WL 34700741, *7 (C.D. Cal. Oct. 25, 2002) (admitting expert testimony based on "relevant hydrogeological data (well tests conducted at wells between the alternative sources and Plaintiffs' wells, and groundwater and surface water flow data)" because it is "clear and reliable").

PLAINTIFF CITY OF LINDSAY'S NOTICE OF MOTION AND MOTION TO STAY PROCEEDINGS
9

outcome of the *Pomona* appeal will fundamentally impact the direction this case takes in terms of both fact and expert discovery on the topic of causation, a stay is not only appropriate, but necessary to avoid the prejudice to Lindsay in having to prepare expensive and potentially unnecessary expert work product.

The Federal Rules presumptively give <u>both</u> sides until 90 days before trial to consult with experts and decide what expert witnesses to rely on.  *See* Fed. R. Civ. P. 26(a)(2)(D).[4] Defendant's one-sided proposal that Lindsay disclose all of its causation evidence now is a wasteful, inefficient, and unjust deviation from the normal timing of expert disclosures and discovery under any circumstances, but is particularly inappropriate in light of the pending *Pomona* appeal, which will profoundly affect the nature and scope of the causation proof in this case.  Rather than forcing Lindsay to prepare its causation case now, while the admissibility of its isotopic fingerprint evidence hangs in the balance, the more efficient and just approach is to stay this case temporarily until the Ninth Circuit disposes of the pending appeal in *Pomona*.

### D.    A Stay Will Conserve Resources and Promote the Orderly Course of Justice

In addition to causing no prejudice to Defendant while alleviating hardship to Lindsay, a temporary stay will conserve judicial resources and promote the orderly course of justice.  It is indisputable that resolution of the appeal in the *Pomona* case will impact this case.  Defendant has already shown that it intends to urge this Court to adopt Judge Klausner's *Daubert* ruling with respect to Dr. Sturchio in this case.  *See* Defendant's Reply to Status Update and Request for Decision (Docket No. 34), 3:6-9 ("Judge Klausner's exclusion of Neil Sturchio focused on the unreliability of his methodology and the fact that it had not been accepted in the scientific community.  Such a ruling would stand regardless of whether he were testifying [in] Pomona or in Lindsay.")  Yet, this Court is required to conduct its own inquiry, which will entail review of

---

[4] Indeed, although Lindsay was amenable to an early and reciprocal disclosure of isotopic causation evidence, Lindsay always maintained that early disclosure should not extend to expert evidence generally, as that would require the early creation of expensive and potentially unnecessary expert work product.  Robins Decl., ¶ 12; *see also* Exhibit A to Declaration of Todd E. Robins in Opposition to Defendant's Motion for "Lone Pine" Case Management Order (Docket No. 14).

the same voluminous evidence that will be before the Ninth Circuit. *See Smith v. Pacific Bell Telephone Co., Inc.*, 662 F. Supp. 2d 1199, 1227 (E.D. Cal. 2009) (district courts have "an inescapable obligation to determine whether proffered expert testimony in a particular case is 'scientific' and whether the proffered expert's 'knowledge' will assist the trier of fact"). It makes no sense for this Court to expend limited public resources dealing with a complex issue at the same time that it is being reviewed by the Ninth Circuit.

In fact, the Ninth Circuit's review of the appeal in the *Pomona* case is likely to simplify the evidentiary inquiry of this Court. For example, if the Ninth Circuit finds that the scientific methodologies employed by Dr. Sturchio have sufficient indicia of reliability to be admissible, this will certainly inform any decision that this Court would have to make and may even lead to a stipulation between the parties that the evidence meets the relevant standards of admissibility. Alternatively, if the Ninth Circuit were to affirm the exclusion of Dr. Sturchio's opinions, Lindsay would consider relying solely on non-expert causation evidence or developing causation evidence using different scientific methodologies, such as hydrogeology. Under either scenario, there is a possibility that the admissibility of stable isotope analysis will be substantially narrowed or mooted altogether.

As stated above, there is no prejudice to Defendant. But even if there was, it will be more than outweighed by the benefits of proceeding with guidance from the Ninth Circuit and avoiding a motion for reconsideration or an appeal in this case. *See In re Taco Bell Wage and Hour Actions*, 2011 WL3846727, at *3 (issuing stay because "the benefits of proceeding with a certain legal standard will more than make up for the costs of delay and avoid the potential to have to revisit class certification"). As no trial date has yet been set in this case, most of the necessary liability discovery in this case has been completed, and the requested stay is temporary and would end as soon as the Ninth Circuit issues a ruling on the appeal of the exclusion of Dr. Sturchio's opinions (or a summary disposition that resolves the appeal), the stay will not significantly disrupt proceedings in this case.

## IV.  CONCLUSION

For the reasons above, Lindsay respectfully requests that proceedings in this case be

1 stayed pending resolution of the appeals filed with the Ninth Circuit Court of Appeals in the
2 related *Pomona* case.

3 DATED: February 3, 2012              Respectfully submitted,

4                                       SHER LEFF LLP

5                               By:      /s/
                                        TODD E. ROBINS
6                                       JEFFREY SHOPOFF
                                        ESTHER L. KLISURA
7                                       JED J. BORGHEI

8                                       Attorneys for Plaintiff CITY OF LINDSAY

PLAINTIFF CITY OF LINDSAY'S NOTICE OF MOTION AND MOTION TO STAY PROCEEDINGS
12